http://www.va.gov/vetapp16/Files6/1644927.txt

Citation Nr: 1644927 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 10-43 528 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado

THE ISSUE

Entitlement to service connection for cognitive impairment, claimed as dementia, to include as secondary to service-connected mild traumatic brain injury (TBI). 

REPRESENTATION

Veteran represented by: Disabled American Veterans

WITNESSES AT HEARING ON APPEAL

The Veteran and his friend

ATTORNEY FOR THE BOARD

J. Gallagher, Associate Counsel

INTRODUCTION

The Veteran served on active duty from February 1994 to February 1997 and from January 2003 to June 2003. 

This appeal is before the Board of Veterans' Appeals (Board) from a September 2009 rating decision of the abovementioned Department of Veterans Affairs (VA) Regional Office (RO).

In May 2013, the Veteran testified during a Board hearing before a Veterans Law Judge (VLJ) via videoconference. A transcript is included in the claims file. In an August 2016 letter, the Veteran was informed that the VLJ who conducted his hearing is no longer employed by the Board. In September 2016, the Veteran responded indicating that he did not desire a hearing before the VLJ who would decide his case.

In December 2013, the Board remanded the instant matter. As will be discussed herein, the Board finds that the agency of original jurisdiction (AOJ) has substantially complied with the remand orders and no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

The Board notes service connection for a learning disability was originally denied in a September 2003 rating decision. The current claim was treated broadly as an original claim for a new disability in the December 2013 remand, and the Board will therefore continue to construe it as such. 

FINDINGS OF FACT

1. There is clear and unmistakable evidence that the Veteran's cognitive impairment, namely an unspecified neurodevelopmental disorder, pre-existed his entrance to service. 

2. There is clear and unmistakable evidence that the Veteran's cognitive impairment, namely an unspecified neurodevelopmental disorder, did not permanently increase in severity beyond the natural progression of the condition during service. 

3. Although the Veteran has asserted experiencing cognitive impairments such as memory problems that were caused or aggravated by his service-connected TBI,
pertinent medical evidence indicates that the Veteran does not have, and at no point pertinent to this appeal has had, a major or mild neurocognitive disorder due to a TBI.

CONCLUSIONS OF LAW

1. The presumption of soundness is rebutted and cognitive impairment, namely an unspecified neurodevelopmental disorder, pre-existed entry to service. 38 U.S.C.A. § 1111 (West 2002); 38 C.F.R. §§ 3.303, 3.304(b) (2015).

2. Cognitive impairment, namely an unspecified neurodevelopmental disorder, was not aggravated by service. 38 U.S.C.A. §§ 1110, 1131, 1153, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.306 (2015). 

3. The criteria for service connection for a major or mild neurocognitive disorder due to a TBI are not met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.310 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist
 
Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In the present case, required notice on both a direct and secondary basis was provided by letters dated February 2007, April 2009, and July 2009. Pelegrini v. Principi, 18 Vet. App. 112 (2004), Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006 ). 

As to VA's duty to assist, all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's service treatment records and VA medical records have been obtained, as have relevant private medical records identified by the Veteran. 

The Veteran was provided a VA examination of his claimed cognitive disabilities in May 2009 and January 2014. The Board finds that these examinations and their associated reports were adequate. Along with the other evidence of record, they provided sufficient information to decide the appeal and a sound basis for a decision on the Veteran's claim. The examination reports were based on examination of the Veteran by examiners with appropriate expertise who thoroughly reviewed the claims file. Moreover, the opinions offered clear conclusions with significant supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). Moreover, neither the Veteran nor her representative have challenged the adequacy of this VA examination. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination regarding the issue decided herein has been met. 

In December 2013, the Board remanded the Veteran's appeal with instruction to provide the Veteran with a VA examination to address aggravation, which occurred in February 2014. The Board is therefore satisfied that the instructions in its remand of December 2013 have been satisfactorily complied with. See D'Aries, supra.

Additionally, in May 2013, the Veteran was provided an opportunity to set forth her contentions during the hearing before a now retired Veterans Law Judge. In Bryant v. Shinseki, the Court held that 38 C.F.R. § 3.103 (c)(2) requires that the RO Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

Here, during the May 2013 hearing, the presiding Veterans Law Judge enumerated the issue on appeal, which was then characterized as service connection for dementia secondary to a TBI. Also, information was solicited regarding the etiology of the Veteran's claimed dementia, to include his allegations that it caused by his service-connected TBI. He also detailed his symptoms after the in-service TBI and his current functional impairments. The Veteran's friend testified as to his observations of the Veteran's symptoms and functional impairments. Therefore, not only was the issue "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. Id. at 497. Moreover, additional development was undertaken following the hearing in order to ensure that all necessary evidence was of record, which included obtaining an examination and opinion to determine the nature and etiology of the Veteran's claimed dementia. As such, the Board finds that, consistent with Bryant, the presiding Veterans Law Judge complied with the duties set forth in 38 C.F.R. 3.103 (c)(2) and that the Board may proceed to adjudicate the claim based on the current record. 
 
Therefore, VA has satisfied its duties to notify and assist, additional development efforts would serve no useful purpose, and there is no prejudice to the Veteran in adjudicating this appeal. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

Analysis

The Veteran seeks service connection for cognitive impairment related to his service-connected TBI.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). Service connection may also be granted for any disease diagnosed after discharge when the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection is also warranted for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Such secondary service connection is warranted for any increase in severity of a nonservice-connected disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(b).

When determining service connection, a presumption of soundness ordinarily applies. 38 C.F.R. § 3.304(b). Pursuant to such presumption, a Veteran will be considered to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto and was not aggravated by such service. Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); Horn v. Shinseki, 25 Vet. App. 231, 234 (2012). Only such conditions as are recorded in examination reports are to be considered as noted. The burden falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the disability was both preexisting and not aggravated by service. The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any increase in disability was due to the natural progress of the preexisting condition. 38 U.S.C.A. § 1153; Wagner, 370 F.3d at 1096.

As noted, a claim for service connection, requires a finding of current disability that is related to an injury or disease in service. Watson v. Brown, 4 Vet. App. 309 (1993); see also Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141, 143 (1992). The requirement of the existence of a current disability is satisfied when a veteran has a disability at the time he files his claim for service connection or during the pendency of that claim, even if the disability resolves prior to adjudication of the claim. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). However when the record contains a recent diagnosis of disability prior to a veteran filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency. See Romanowsky v. Shinseki, 26 Vet. App. 289 (2013).

Under applicable regulation, the term "disability" means impairment in earning capacity resulting from diseases and injuries and their residual conditions. 38 C.F.R. § 4.1. See also Allen v. Brown, 7 Vet. App. 439 (1995).; Hunt v. Derwinski, 1 Vet. App. 292, 296 (1991). The Board notes that a symptom such as pain, without a diagnosed or identifiable underlying malady or condition, does not, in and of itself, constitute a "disability" for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282 (1999).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.

Private treatment records reflect that in February 1992, prior to induction into service, the Veteran underwent psychological testing, which revealed adjustment disorder with anxious mood, developmental reading disorder in word attack functioning, developmental arithmetic disorder, and developmental expressive writing disorder, with an additional rule-out diagnosis of Attention Deficit Hyperactivity Disorder (ADHD) residuals. The possibility of organic brain dysfunction or disorder was suggested, with need for further evaluation. He subsequently underwent a March 1992 qualitative neuropsychological evaluation. The report stated that he was diagnosed with a learning disability while in the first or second grade, after exhibiting problems with English, math, and perceptual-motor skills. Testing showed that he functioned in the low average range of intelligence with a significant verbal/performance split, verbal higher than performance. Testing further showed that his overall immediate memory functioning was in the low average range. His Halstead-Reitan Impairment Index score was suggestive of severe brain dysfunction. The report concluded that the results of current and previous assessments suggested bilateral brain dysfunction, and his history suggested that the causes of this dysfunction were prenatal or soon after birth. 

Service treatment records include an April 2001 examination from the Veteran's Reserve service. No cognitive disability was noted at this examination. Records further reflect that the Veteran suffered a fall on February 20, 2003. His service-connected TBI residuals are the result of this injury. Three days prior to this incident, the Veteran requested to be discharged due to his reported learning disability and depression. He provided his psychiatrist with a copy of the abovementioned 1992 reports. He was diagnosed with dysthymia and noted to have a history of a learning disability. In April 2003, his psychiatrist determined that he was unfit for his current duties. He was subsequently discharged as unfit for duty.

The Veteran underwent a VA examination in June 2003 upon separation from service. He reported that he first sought mental health treatment in January 2002 when his unit was activated, reporting difficulty concentrating, nervousness, and headaches. He stated that that time that he had been seeing a civilian doctor since 2000 for the same symptoms. The examiner diagnosed the Veteran with moderate dysthymia and low intellectual functioning. 

At a September 2003 VA examination for his TBI and associated headaches, the Veteran reported that he also suffered memory issues that have worsened over the years. The examiner diagnosed posttraumatic headaches, but opined that the Veteran's reported memory loss was not a result of his TBI. This opinion was based on the rationale that the Veteran reported worsening memory loss, where TBI symptoms tend to be static or if anything will improve. The examiner suggested that memory loss might rather be secondary to a psychological disability, possibly depression. In a December 2003 addendum, the examiner elaborated that because depression was shown to predate both TBI and the Veteran's second period of service, his memory loss was could not be related to service secondarily through depression.

In a December 2003 statement, the Veteran described the February 2003 TBI incident. He did not describe any cognitive residuals.

VA treatment records reflect that in July 2006, the Veteran reported that ever since his TBI he has experienced memory loss and poor concentration. 

In a statement received in April 2007, the Veteran's employer reported that he was employed via a program for persons with disabilities, and that he required constant supervision and direction. He required extensive guidance and did not use good judgment when given more than one task at a time.

In his March 2009 claim, the Veteran stated that he suffered a TBI on February 20, 2003. He reported that follow-up evaluation and treatment for brain injury was recommended, but he never received this treatment. He stated that after the accident, his performance of his duties declined markedly, as he had trouble with his memory, had trouble focusing, and became confused easily. He reported that these problems have persisted and make it difficult for him to maintain employment.

In March 2009, VA received a report from the Veteran's private licensed professional counselor. The counselor reported treating the Veteran since November 2002. According to the counselor, shortly after his February 2003 TBI the Veteran reported problems with confusion, memory, focus, and task performance. The counselor stated that he had only had five appointments with the Veteran prior to the February 2003 TBI, so there was not yet a clear baseline for levels of cognitive and sensory-motor impairment. The counselor nevertheless found the Veteran's reports of worsening cognition credible, though the Veteran did not initially connect his problems with the accident. The counselor opined that the Veteran's cognitive impairment was the result of his TBI, and further stated that his symptoms were typical for brain injury patients. The counselor gave a detailed inventory of the Veteran's symptoms. As to his prior diagnoses, the counselor stated that the Veteran was reportedly diagnosed with ADHD prior to service, but noted that his current symptoms are atypical for ADHD. Additionally, the counselor reported interviews with two of the Veteran's co-workers who witnessed the February 2003 TBI, both of whom reported that the Veteran's performance of his job and generally functioning declined following his injury.

The Veteran underwent a VA examination in May 2009. He reported that ever since his TBI he had been "not right." He reported an inability to help his neighbor fix his car because he can no longer remember where the parts go. He stated that he often forgets things when leaving for work. He reported that if his boss tells him 6 or 7 things to do, he will only remember 2 or 3 of them. He stated that he no longer likes to talk to people. The examiner diagnosed a history of learning disability and low average intellectual abilities. The examiner explained that the difficulties that the Veteran has with attention and concentration have been present at least since 1992 and are stable since that time. Neuropsychological testing scores from this examination were very similar to those from the 1992 tests. For these reasons, the examiner concluded with a reasonable degree of psychological certainty that the Veteran's cognitive symptoms were due to a prenatal or very early life trauma and not to the February 2003 incident.

In a June 2009 letter, the Veteran's private licensed professional counselor stated his opinion that the Veteran's cognitive and behavior symptoms are the result of his TBI but not the result of his headaches.

In a June 2009 statement, the Veteran stated that he suffers dementia due to his TBI, specifically problems with memory, understanding directions, irritability, and impulse control.

In August 2009, VA received statements from the Veteran's employer indicating that he is employed as a custodian through a program that helps employ people with disabilities. His employer stated that while the Veteran performs his work in an acceptable manner, he has significant cognitive challenges and requires much support and guidance.

In his January 2010 notice of disagreement, the Veteran reported that his ability to perform his job changed after his TBI. He had trouble staying on task and performing routines that he had previously performed. He reported being easily distracted. He denied depression and thus disagreed with the September 2003 examiner's opinion that his cognitive symptoms were secondary to depression.

In his October 2010 substantive appeal, the Veteran again reported that he was no longer able to perform his in-service duties as a mechanic after his February 2003 TBI. He further stated that his private counselor told him that it was impossible to compare his neuropsychological testing scores in 1992 and 2009 unless VA sent a copy of the 2009 test results. In compliance, VA sent the Veteran copies of the relevant records several days after receipt of his substantive appeal.

At his May 2013 hearing, the Veteran described falling and hitting his head on the concrete in February 2003. He reported that after this injury his memory went down significantly, and he would forget things and get lost easily. He stated that he was discharged due to psychological problems caused by the TBI. The Veteran's roommate was present and testified that they had been roommates since before the accident, and the accident affected the Veteran's cognitive abilities.

The Veteran underwent another VA examination in January 2014. He reported that since his in-service TBI, he is unable to mechanically fix items that he was able to fix prior to the injury. He reported being much slower and forgetful, with memory problems significantly worsening over time. On examination, he was administered the Montreal Cognitive Assessment, the results of which were suggestive of significant cognitive impairment. He was then administered a neuropsychological screening battery. Cognitive symptom validity testing revealed suboptimal effort, as the Veteran scored worse than would be expected even for an individual with significant cognitive deficits. Based on these results and the Veteran's medical records, the examiner opined that it is less likely than not that the Veteran meets the criteria for a neurocognitive disorder due to his TBI. Specifically, the examiner concluded that it was less likely than not that the Veteran's neurodevelopmental disorder had an onset in service or within one year of separation, is related to an in-service TBI, or is otherwise related to service. This opinion was based on a detailed rationale in the examination report. The examiner explained that the Veteran consistently exhibited a low average IQ and other areas of cognition in testing dated from 1992 to 2009. There was no objective evidence of cognitive changes due to a 2003 incident. The examiner further explained that the more likely explanation for current systems was an underlying neurodevelopmental disorder. This disorder dates from childhood, and was first reflected in a 1992 diagnosis of a learning disability and low average IQ. 

As an initial matter, the Board notes that at his hearing he and his representative stated that he served from 1994 to 2003 without interruption. While one copy of his most recent DD-214 confirms this, a correction to that document shows that this is in error. Furthermore, the Veteran's service records and his past statements indicate that while he had some Reserve service between 1997 and 2003, his unit was activated in January 2003 and this is when his second active duty period began.

There is no indication that any cognitive disabilities were noted upon entry into service for either period of active duty. The Veteran is therefore presumed sound at induction, and any cognitive disabilities present in service are service-connected unless there is clear and unmistakable evidence that a disability pre-existed service and was not aggravated by service.

Turning first to the "preexistence prong," the Board finds that there is clear and unmistakable evidence that the Veteran's unspecified neurodevelopmental disorder existed prior to service. As support for this determination, attention is directed to the specific conclusion by a VA medical examiner in January 2014 that there was clear and unmistakable evidence that the Veteran's cognitive impairment existed prior to service. In this regard, the January 2014 opinion included a clear conclusion with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. Therefore, the Board accords it great probative value, and notes that the opinion is well supported by the private clinical records dated prior to service that reflected that the Veteran had a low average IQ and other areas of cognition and that he had been diagnosed with a learning disability and low average IQ in 1992. In addition, the May 2009 VA examiner noted that the Veteran's difficulties with attention and concentration had been present since 1992 and concluded that they were due to a prenatal or very early life trauma.

As to the "aggravation prong" the Board finds that there is clear and unmistakable evidence that the Veteran's unspecified neurodevelopmental disorder that existed prior to service did not increase in severity beyond the natural progression of any such condition during service. The most probative evidence to this determination is the January 2014 VA medical professional's opinion that the Veteran's unspecified neurodevelopmental disorder was not aggravated beyond its natural progress by service as his low average IQ and other areas of cognition were consistent on testing from 1992 to 2009. Moreover, the examiner suggested that the Veteran's post-service functioning with appropriate accommodations represented an improvement over his pre-military functioning as he was able t hold a steady job. In this regard, and as previously set forth, the January 2014 opinion included a clear conclusion with supporting data as well as reasoned medical explanations connecting the two. Id. Therefore, the Board accords it great probative value. 

With regards to the Veteran's claim that he suffers from dementia as a result of his TBI, the Board notes that the January 2014 VA examiner found that the Veteran did not meet the criteria for a major or mild neurocognitive disorder due to a TBI, which is the Diagnostic and Statistical Manual of Mental Disorders 5 (DSM-5) nomenclature for dementia. There is no contrary, probative opinion of record. Here, the Veteran has not demonstrated, fundamentally, that he has, or at any time pertinent to this claim has had, a current major or mild neurocognitive disorder due to a TBI. Rather, objective examinations have found no such disability. Notably, neither the Veteran nor his representative has submitted or even identified any medical evidence to indicate otherwise.

Although the Veteran seems to assert that, in this case, the presence of a service-connected TBI and memory difficulties warrant an award of service connection for a neurocognitive disorder secondary to a TBI, the Board emphasizes that Congress has specifically limited entitlement to service connection for disease or injury to cases where such incidents have resulted in disability. See 38 U.S.C.A. §§ 1110, 1131; see also 38 C.F.R. §§ 3.303, 3.310. Thus, where, as here, medical evidence indicates that, fundamentally, the Veteran does not have-at, at no point pertinent to this appeal, has had-a major or mild neurocognitive disorder due to a TBI, there can be no valid claim for service connection, on any basis. Simply stated, without medical evidence of a current, chronic major or mild neurocognitive disorder due to a TBI within the meaning of McClain and Romanowsky, in this appeal, the fundamental requirement of current disability is simply not met. 

Furthermore, as for any direct assertions by the Veteran and/or his representative as to diagnosis and/or medical etiology, the Board finds that such assertions do not provide persuasive evidence in support of the claim. The medical matters of the diagnosis and etiology of the claimed cognitive impairments are matters within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). Although lay persons are competent to report symptoms or other matters within their personal knowledge, and to provide opinions on some medical matters (see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011)), here, the specific matters of the diagnosis and etiology of claimed cognitive impairments are complex medical matters that fall outside the realm of common knowledge of a lay person. 
See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n. 4 (Fed. Cir. 2007) (providing that lay persons are not competent to diagnose cancer). The Veteran and his representative are not shown to be other than laypersons without appropriate training and expertise, neither is competent to render a probative (i.e., persuasive) opinion the medical matters upon which this claim turns. Id. Hence, such lay assertions as to either diagnosis or medical nexus have no probative value. 

In short, the Board concludes that there is clear and unmistakable evidence that the Veteran's diagnosed unspecified neurodevelopmental disorder existed prior to service and was not aggravated by service. Consequently, the presumption of soundness has been rebutted and the Veteran's unspecified neurodevelopmental disorder pre-existed his military service. Additionally, for the same reasons discussed above, the Board finds that, based on the competent and most probative evidence of record, most significantly the January 2014 opinion, the Veteran's pre-existing unspecified neurodevelopmental disorder was not aggravated by his military service. Finally, the Board finds that the Veteran does not currently suffer from, and has not suffered from, a major or mild neurocognitive disorder due to a TBI.

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for cognitive impairment. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.

ORDER

Service connection for cognitive impairment, claimed as dementia, to include as secondary to service-connected mild TBI, is denied.

____________________________________________
KRISTY L. ZADORA
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs